FILED
2006 Apr-27  AM 10:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ABNER MERRIWEATHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No: 5:O3-CV-0294-VEH** |
| | ) | |
| **R. L. BROWNLEE,** | ) | |
| **Acting Secretary, Department of** | ) | |
| **the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Abner Merriweather (hereinafter "Plaintiff") brings this action pro se against his employer, the United States Army (hereinafter "Defendant"), alleging racial discrimination, religious discrimination, and retaliation.   Before the court is Defendant's March 2, 2004, Motion for Summary Judgment as to Plaintiff's claims. (Doct. 21).   For the reasons set forth herein, Defendant's motion is due to be **GRANTED**.

## I.   FACTUAL HISTORY_

At the time of this action, Plaintiff had been employed by Defendant as an

1

electrical engineer for fifteen years.[1]  (Doct. 22, ¶ 2).  He worked for the United States Army Aviation and Missile Command at Redstone Arsenal, Alabama, at Defendant's Aviation and Missile Research, Development and Engineering Center (MRDEC) for the Aviation Engineering Directorate.  (Id.).  Plaintiff's immediate supervisors there were Robert D. Barber, and Dr. Miles E. Holloman.  (Id., ¶¶ 3-4).

_____In December 1995, Plaintiff wrote a letter to Defendant in which he expressed concern that, despite numerous positive performance ratings, he had not been promoted or granted a pay increase in more than two years.  (Doct. 29, Exh. 1).  He received a promotion the following September.  (Id.).

In August 1997, Plaintiff informed Mr. Barber that he intended to file an EEOC charge of discrimination against Defendant because he had been placed on an over-hire list.[2]  (Id.).  In September, Mr. Barber directed two of Plaintiff's coworkers, Mr. Mullins and Mr. Dempsey, to begin recording any problems or disputes they had with

---

[1]The record indicates that Plaintiff has since transferred to another department within the United States Army.  (Doct. 22, Exh. 3, pg. 11).

[2]The record contains no explanation of the "over-hire" list or how Plaintiff's inclusion on it implicated Plaintiff's employment.

The record is unclear whether Plaintiff filed this EEOC charge in August 1997 or in April 1998.  Plaintiff's Complaint and Brief in Response to Defendant's Motion for Summary Judgment suggest that Plaintiff filed the charge in August 1997.  (Doct. 2; Doct. 29, pg. 1).  However, Plaintiff's Reply Brief also indicates that he did not file a formal charge until April 1998, but that he met with his EEOC counselor, Mr. Claus Martel, regarding the charge as early as January 1998.  (Doct. 29, pg. 4).

Plaintiff.[3]  (Id.).

On April 8, 1998, Plaintiff "hand-delivered" his formal EEOC charge to Mr. Martel.  (Doct. 29, pg. 4).  Later that day, Mr. Martel informed Mr. Barber that he was concerned about Plaintiff's financial condition.  (Doct. 29, Exh. 9).  Mr. Martel explained that Plaintiff had incurred some personal debt after making large donations to his church.  (Doct. 29, Exh. 11).  The debt appeared to exceed a "typical" mortgage or car loan.  (Id.).  He explained further that Plaintiff had filed an EEOC complaint against Defendant in which he requested compensation for alleged discrimination. (Id.).  According to Mr. Martel, Plaintiff "seemed desperate to find a way to pay" off the alleged debt.  (Id.).

Mr. Barber shared this information with Dr. Holloman.  Believing the debt could affect Plaintiff's security clearance with Defendant, Dr. Holloman instructed Mr. Barber to report the information to Defendant's Security Intelligence Office.[4] (Doct. 29., Exh. 12).

Plaintiff alleges that he was not informed of the ensuing investigation into his

---

[3]The record contains a series of memoranda written by Mr. Barber, Mr. Mullins, and Mr. Dempsey concerning Plaintiff, the earliest of which is dated August 25, 1997.  (Doct. 29, Exh. 2).

[4]  The record indicates that Plaintiff required a security clearance to perform his job.  If Plaintiff's security clearance had been revoked as a result of the allegations into his financial condition, it is possible that his employment would have been terminated.  (Doct. 22, Exh. 2).

financial condition until seven months later, when he sought a transfer to another department, and that he was never given the opportunity to rebut the allegation despite its potential effect on his employment.  However, after a "brief investigation," the Security Intelligence Office concluded that Plaintiff's security clearance was not at risk and the matter was closed with no impact on Plaintiff's employment.  (Doct. 4, ¶ 3).

In June 1998, Plaintiff was placed in a "competitive level" by himself.  (Doct. 27).  Plaintiff alleges that this placement exposed him to a risk of being given Reduction in Force (RIF) status, which he could have avoided had he been placed in a competitive level with other employees.[5]

In July 1998, Plaintiff received a job performance rating of "C" for the period September 1997 through June 1998.  (Doct. 29, Exh. 3).  Plaintiff alleges that this rating is the lowest he has received during his career.

## II.   PROCEDURAL HISTORY

After receiving the "C" performance rating, Plaintiff filed three additional

---

[5]The record does not define "competitive level" or "Reduction in Force."  The record implies, however, that "Reduction in Force" is similar or equivalent to a reduction in Defendant's workforce, and could have had a significant impact on Plaintiff's employment had he been given RIF status.  (Doct. 22, Exh. 5, pg. 60, 148-150, 181-82, 186).

EEOC charges against Defendant.[6]  (Doct. 2, Exh. 2).  In these charges, Plaintiff alleged that:

(1) Defendant reported him to its Security Intelligence Office to investigate his alleged financial difficulties;

(2) Mr. Barber and two coworkers wrote negative memoranda about him;

(3) Defendant gave him a performance rating of "C" during the period ending June 30, 1998;

(4) he was placed into a competitive level by himself (hereinafter "unique competitive level") on June 30, 1998;

(5) Defendant invaded his privacy by illegally gaining entry to his bank accounts with Redstone Federal Credit Union and by viewing his credit report without his knowledge or consent;

(6) Defendant improperly prevented him from knowing about the investigation into his financial condition;

(7) Defendant conspired with Plaintiff's EEOC counselor to have Plaintiff fired in retaliation for his August 1997 EEOC charge; and

(8) Defendant jeopardized Plaintiff's career by accepting information about

---

[6]Two of these charges was filed on May 20, 1999.  (Doct. 22, Exh. 2).  The record does not specify when the other charge was filed.

him from an "anonymous stranger,"[7] without proof or verification.  (Doct. 2).

_____The EEOC responded to Plaintiff's charges in three separate orders, all dated September 12, 2002, in which it affirmed the Administrative Judge's finding, without a hearing, that Plaintiff had not been subjected to unlawful employment discrimination.  (Doct. 2).  Pursuant to his right to sue, Plaintiff initiated this action on December 12, 2002.  (Id.).

_____Plaintiff filed an Amended Complaint on March 10, 2003, in which he made the following allegations against Defendant:

(1) he was given a "C" performance rating during the evaluation period ending June 30, 1998;

(2) he was placed into a unique competitive level on June 30, 1998;

(3) the EEOC notified Defendant that Plaintiff was suffering financial difficulties and that Defendant was obligated to share this information with its Security Intelligence Directorate;

(4) the EEOC invaded Plaintiff's privacy by pulling his credit report on February 3, 1998;

(5) the EEOC invaded Plaintiff's privacy by obtaining access to his bank

_____

[7]The "anonymous stranger" appears to refer to Mr. Clause Martel, who initially shared his concerns regarding Plaintiff's personal debt with Mr. Barber on condition of anonymity.  (Doct. 29, Exhs. 11 & 12).

accounts at Redstone Federal Credit Union;

(6) the EEOC attempted to have Plaintiff fired by Defendant by investigating Plaintiff and providing Defendant with "false and misleading information";

(7) the EEOC gained illegal entry into Plaintiff's financial records;

(8) Defendant denied Plaintiff his rights by preventing him from knowing about the investigation into his financial condition, and that Defendant did not follow proper procedures in accordance with its regulations and guidelines;

(9) Defendant jeopardized Plaintiff's career by "unquestioningly accepting the word of an anonymous stranger, without asking for verification or proof of credibility" regarding Plaintiff's financial condition;

(10) Defendant conspired with the EEOC to terminate Plaintiff's employment for filing an EEOC charge of discrimination against it;

(11) on or about April 8, 1998, Plaintiff's supervisor submitted Plaintiff's name to Defendant's Security Intelligence Directorate regarding Plaintiff's alleged financial difficulties; and

(12) From September 2, 1997 until July 28, 1998, Plaintiff's supervisor and two coworkers wrote negative memoranda regarding Plaintiff.

Plaintiff claims that these alleged activities constitute racial discrimination, religious discrimination, and retaliation in violation of Title VII (42 U.S.C. § 2000e).

(Doct. 3).

On May 12, 2003, Defendant moved for Partial Summary Judgment on Plaintiff's claims numbered three through nine and eleven. (Doct. 6). On August 6, 2003, a Magistrate Judge's Report and Recommendation was entered, finding that Defendant's Motion was due to be granted as to all the enumerated claims. (Doct. 17). On February 3, 2004, the district court approved and adopted the Magistrate Judge's Recommendation and granted Defendant's Motion. (Doct. 20).

On March 2, 2004, Defendant filed a Motion for Summary Judgment as to Plaintiff's remaining claims (numbers one, two, ten, and twelve). (Doct. 21). Both parties have submitted briefs and evidence in response to Defendant's Motion.

## III.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a

8

genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by

presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden

10

by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.   ANALYSIS

### A.   Racial Discrimination

Plaintiff's Complaint alleges specific facts that may support claims of hostile work environment and disparate treatment based on race.  The court will discuss both causes of action to determine whether Defendant is entitled to summary judgment on either claim or both.

### 1.   Hostile Work Environment

A hostile work environment claim is established under Title VII upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems,*

*Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

Plaintiff must present a prima facie case of hostile work environment by showing that (1) he is a member of a protected class; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of himself; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) a basis for holding Defendant liable for the environment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (applying these factors in the context of a hostile environment sexual harassment claim).

Defendant does not dispute that Plaintiff belongs to a protected class on the basis of his race. However, Defendant alleges that any harassment that Plaintiff endured was not sufficiently severe or pervasive to alter the terms and conditions of his employment.   The Eleventh Circuit has instructed that

> establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component.   The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. . . .  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"

*Mendoza*, 195 F.3d at 1246, quoting *Harris*, 510 U.S. at 21-22, 114 S.Ct. at 370-371,

and *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 1003, 140 L.E.2d 201 (1998).

To determine whether the harassment objectively altered Plaintiff's employment terms or conditions, the court must consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the Plaintiff's job performance. *Mendoza*, 195 F.3d at 1246, citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) and *Harris*, 510 U.S. at 23, 114 S.Ct. 367. The court must examine the alleged conduct in the context in which it occurred to determine whether, under the totality of the circumstances, the harassing conduct is sufficiently severe or pervasive to objectively alter the terms or conditions of Plaintiff's employment. *Mendoza*, 195 F.3d at 1246.

### a.   EEOC Conspiracy

The record indicates that the EEOC contacted Defendant regarding Plaintiff's financial condition on the same day that Plaintiff filed his first EEOC charge against Defendant. (Doct. 29, pg. 4). Plaintiff asserts that the temporal proximity between these two events proves that the EEOC and Defendant conspired to create the allegations concerning Plaintiff's financial condition, and that Defendant intended to use the allegations to compromise Plaintiff's security clearance and thereby cause his

13

employment to be terminated.

While Plaintiff has met the first element of this claim, he has not demonstrated that he suffered from any unwelcome harassment as a result of the alleged conspiracy sufficiently to satisfy the second element of hostile work environment. Plaintiff admits that he was not even aware of the allegations until seven months after the investigation began.[8] (Doct. 29, pg. 4).

Plaintiff has also failed to meet the third element of hostile work environment by showing that the conspiracy was based on a protected characteristic of himself. The record is void of evidence that the alleged conspiracy had anything to do with Plaintiff's race. Finally, with regard to the fourth element of hostile work environment, Plaintiff has presented no evidence that the alleged harassment altered the terms or conditions of his employment.

Plaintiff has thus failed to meet the second, third, and fourth requirements of a prima facie case of hostile work environment with regard to the alleged conspiracy. Accordingly, the court finds that Plaintiff's allegation of a conspiracy between Defendant and the EEOC does not support his hostile work environment claim.

**b.    Negative memoranda**

---

[8]The record does not indicate the length of the investigation, or whether it had concluded by the time Plaintiff learned of it. The investigation had concluded when he filed the EEOC in which he complained of the alleged conspiracy in May 1999. (Doct. 22, Exh. 2)

_____Plaintiff also alleges that his hostile work environment claim is supported by evidence that Mr. Barber and two of Plaintiff's coworkers kept a file of negative memoranda regarding his job performance.  Plaintiff claims that these "horrible" memoranda "intensely slandered, continuously criticized, harassed, and terrified" him, making it virtually impossible for him to perform his job.  (Doct. 27).

_____While Plaintiff has satisfied the first two elements of hostile work environment with regard to the memoranda, he has presented no evidence that the harassment was based on a protected characteristic of himself, or that the harassment was severe and pervasive enough to alter the terms and conditions of his employment.  Plaintiff's only argument with regard to the severity and pervasiveness of the memoranda is that they contain several inaccurate and unfair statements regarding his job performance that are contradicted by other statements by Defendant in the record.  Plaintiff supports this argument with letters of appreciation from supervisory personnel other than Mr. Barber and Dr. Holloman expressing gratitude for Plaintiff's work, as well as a job performance rating of "A" that he received during the period in which the memoranda were written.[9]

Regardless of whether the memoranda were based on inaccurate information,

---

[9]Plaintiff's "A" performance rating is dated September 12, 1997, less than one month after Defendant began to keep the negative memoranda in question.  (Doct. 29).

the record contains no evidence that they constituted harassment that was severe and pervasive enough to effect the terms or conditions of Plaintiff's employment. While Plaintiff may subjectively perceive the harassment as sufficient to meet this element of his claim, the harassment must objectively alter his employment terms or conditions as described in part IV-A-1 of this opinion.

With regard to the frequency of the conduct, the record indicates that the memoranda were kept for a period of one year, beginning August 25, 1997. (Doct. 29, Exh. 2). Plaintiff does not allege, nor does the record indicate, that Defendant continued to keep similar memoranda beyond this time period. The court cannot find that Defendant's keeping this file for one year during Plaintiff's fifteen years of employment constitutes "frequent" conduct sufficient to satisfy this element. With regard to the severity of the conduct, the court cannot find that a reasonable person would consider memoranda, even if based on inaccurate information, as rising to the level of severity required to satisfy this element of a hostile work environment claim. Furthermore, the record contains no evidence that Plaintiff was physically threatened or humiliated by the memoranda. Finally, the record contains no evidence that the memoranda unreasonably interfered with Plaintiff's job performance. While Plaintiff alleges that the memoranda made it more difficult for him to perform his work, he presents no evidence in support of this statement.

16

_____The court finds that Plaintiff has failed to satisfy the third and fourth elements of a prima facie case of hostile work environment based on the memoranda. Furthermore, because neither the memoranda nor the alleged conspiracy between Defendant and the EEOC establish a hostile work environment, Defendant's Motion for Summary Judgment is due to be granted as to this claim.

### 2.    Disparate Treatment

Plaintiff may prove disparate treatment by presenting either direct or circumstantial evidence of discrimination.  See *Hawkins v. Ceo Corp.*, 883 F.2d 977, 982 (11th Cir. 1989).  Direct evidence is "evidence which, if believed, would prove the existence of a fact in issue without inference or presumption."  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990), citing *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989).

The record contains no direct evidence of discrimination by Defendant. Plaintiff must therefore rely on circumstantial evidence to prove his claim.  See *Hawkins*, 883 F.2d at 982.  To establish a prima facie case of discrimination with circumstantial evidence, Plaintiff must satisfy the inferential test established by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Plaintiff must show that (1) he belongs to a racial minority; (2) he was subjected to an adverse employment action; (3) his employer treated him

17

less favorably than similarly situated employees outside his classification; and (4) he was qualified to perform the job in question. *Merriweather v. Alabama Dept. of Public Safety*, 17 F.Supp.2d 1260, 1267 (M.D.Ala. 1998), *aff'd*, 199 F.3d 443 (11th Cir. 1999), citing *Jones v. Carraway Medical Ctr.*, 137 F.3d 1306, 1310 (11th Cir. 1998), *superceded in non-relevant part on denial of reh'g*, 151 F.3d 1321 (11th Cir. 1998).  See also *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Plaintiff argues that his disparate treatment claim is supported by evidence that (1) he was the only electrical engineer to receive a "C" performance rating and be placed in a unique competitive level where he was threatened with RIF status; (2) he was not allowed to participate in the investigation into his financial condition; and (3) his supervisor and coworkers kept negative memoranda concerning his job performance.

Defendant responds that Plaintiff cannot present a prima facie case of disparate treatment based on this evidence because none of the alleged facts constitutes an adverse employment action.   The Eleventh Circuit has defined an adverse employment action as

> an ultimate employment decision, such as discharge or failure to hire, or "other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities,

or adversely affects his or her status as an employee."

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997).  "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001)(applying adverse employment action standard to ADA case), citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1241 (11th Cir. 2001).

The Eleventh Circuit has further instructed that, while the question whether an adverse employment action has occurred must be answered on a case-by-case basis, there is nevertheless "some threshold level of substantiality that must be met for unlawful discrimination to be cognizable." *Davis*, 245 F.3d at 1238, citing *Wu v. Thomas*, 996 F.2d 271, 273-74 (11th Cir. 1993).  "This limitation is consistent with the basic principle that 'Title VII is neither a general civility code nor a statute making actionable the "ordinary tribulations of the workplace.'" *Davis*, 245 F.3d at 1239, quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), and *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).  Thus,

> to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as

19

viewed by a reasonable person in the circumstances. . . .

*Davis*, 245 F.3d at 1239 (emphasis in original).

The court finds that none of the alleged facts constitute an adverse employment action sufficiently to support Plaintiff's disparate treatment claim.  Plaintiff has not shown that the memoranda, the performance rating, or the investigation into his financial condition either constituted or led to a "serious and material change" in his employment terms, conditions, or privileges. With regard to the investigation, the Security Intelligence Directorate concluded that Plaintiff's financial condition did not place his security clearance at risk.  (Doct. 4, ¶ 3).  "No action was ever taken to suspend or revoke [Plaintiff's] security clearance." (Id.).  Consequently, Plaintiff has not shown that his inability to explain the allegations against him resulted in an adverse effect on his employment.

Similarly, the performance rating, while the lowest in his career, does not appear to have affected any aspect of Plaintiff's employment.  In *Lucas v. W.W. Grainger, Inc.*, the Eleventh Circuit explained that a negative performance review that does not result in "*any* effect on [the claimant's] employment," and on which the employer did not rely in making "any employment decisions regarding" the claimant does not rise to the level of an adverse employment action.  257 F.3d at 1261 (emphasis in original).  Thus, the "C" performance rating by itself does not constitute

20

an adverse employment action in satisfaction of the second element of this claim.[10]

With regard to the memoranda, the Eleventh Circuit has instructed that

> [c]ourts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline.

*Davis*, 245 F.3d at 1241.  Plaintiff does not allege, nor does the record indicate, that he has been constructively discharged or terminated.  Neither his compensation nor his work schedule have been affected as a result of any of the alleged facts.  At the time he filed this action, Plaintiff was still employed by Defendant in the same position he had occupied for at least fifteen years.

Without showing that he suffered an adverse employment action, Plaintiff has failed to present a prima facie case of disparate treatment.  Accordingly, the court finds that Defendant is entitled to summary judgment as to this claim.

### B.    Religious Discrimination

Plaintiff claims that Defendant discriminated against him in the matters previously discussed on the basis of his religion as well as his race.  Because Plaintiff

---

[10]Plaintiff also alleges that he requested that Dr. Holloman change his performance rating, but that this request was denied.  He claims that at least four other employees who received negative performance ratings also requested that their ratings be changed, and these requests were granted.  Defendant has not responded to this allegation.  However, because a negative performance evaluation does not per se constitute an adverse employment action, this allegation does not support his disparate treatment claim.

does not specifically allege either disparate treatment or hostile work environment in connection with this claim, the court will discuss both causes of action in determining whether Defendant is entitled to summary judgment.

### 1.    Disparate Treatment

As discussed pursuant to his race discrimination claim, Plaintiff has presented no direct evidence that Defendant discriminated against him.  He must therefore rely on circumstantial evidence to show that Defendant has discriminated against him on the basis of his religion.  See *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989).  To establish a prima facie case of religious discrimination with circumstantial evidence, Plaintiff must satisfy the inferential test established by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  He must show that: (1) he is a member of a protected class; (2) he was qualified to receive a job benefit or position; (3) he was subjected to an adverse employment action; and (4) someone of a different religion received the position or other job benefit that he was denied.  See *Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002).

The performance rating, financial allegations, and negative memoranda discussed pursuant to Plaintiff's racial disparate treatment claim may support his religious discrimination claim.  However, Plaintiff has not shown that the alleged

22

occurrences constituted an adverse employment action.  As previously discussed, negative memoranda concerning a claimant, even if based on false information, does not per se  constitute an adverse employment action.  See *Davis*, 245 F.3d at 1240. Similarly, a low performance rating does not rise to the level of an adverse employment action if it is unaccompanied by a tangible effect on Plaintiff's employment.  (See Part IV-A-2 of this opinion).  Finally, there is no evidence that Plaintiff's inability to explain the allegations about his financial condition resulted in any adverse effect on his employment.  (Id.).  Accordingly, the court finds that Plaintiff has not presented a prima facie case of disparate treatment on the basis of his religion.

## 2.    Hostile Work Environment

The alleged conspiracy between Defendant and the EEOC and the negative memoranda discussed pursuant to Plaintiff's race-based hostile work environment claim may also support a claim of hostile work environment based on Plaintiff's religion. [11]  However, similar to Plaintiff's race-based hostile work environment claim, Plaintiff has failed to show that any harassment he suffered resulting from the conspiracy or the memoranda was based on his religion, nor has he shown that the

---

[11]The elements of a prima facie case of hostile work environment are set out in Part III-A of this opinion.

alleged facts affected terms or conditions of his employment.  Consequently, the court finds that Plaintiff has not presented a prima facie case of hostile work environment on the basis of his religion.

Because Plaintiff has failed to present a prima facie case of hostile work environment or disparate treatment based on his religion, the court finds that Defendant is entitled to summary judgment as to this claim.

### C.    Retaliation

In addition to his discrimination claims, Plaintiff alleges that Defendant retaliated against him for filing EEOC charges against it.  (Amended Compl. ¶ 4).  He supports this claim with evidence regarding (1) his "C" performance rating; (2) the alleged conspiracy between Defendant and the EEOC; (3) the negative memoranda; and (4) his placement into a unique competitive level.  (Amended Compl. ¶ 4.

The Eleventh Circuit has recognized that Title VII can be violated when an employer retaliates against an employee for engaging in a protected activity.  *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  "To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to [his] protest, so long as [he] had a reasonable good faith belief that the discrimination existed."  *Id.*, quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994), and *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d

24

1491, 1494 (11th Cir. 1989).

To establish a prima facie case of retaliation under Title VII, Plaintiff must show: (1) that he participated in a Title VII-protected activity; (2) that he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action.  See *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999).

In the instant case, Defendant argues that Plaintiff's claim must fail because he has not shown that any of the alleged facts constitutes an adverse employment action.  The record is void of evidence that Plaintiff suffered an adverse employment action resulting from the negative memoranda, his placement in a unique competitive level, or the alleged conspiracy between Defendant and the EEOC.  With regard to the memoranda, Defendant has explained that it established the file in response to a claim by Plaintiff in August 1997 that he was going to start recording particular events at work for use in his EEOC charge against it, and Defendant believed it was necessary to record its version of events should it be called upon to explain Plaintiff's allegations in the future.  Plaintiff does not dispute this explanation, but maintains that the memoranda were written with an intent to retaliate against him.  However, the record contains no evidence that the memoranda constituted an adverse employment action against him, or that they were used for any purpose other than to rebut

25

Plaintiff's description of Defendant's allegedly discriminatory conduct.

With regard to Plaintiff's placement into a unique competitive level, Defendant asserts that this placement was a mistake, and that as soon as Plaintiff brought it to Defendant's attention in 1998, he was moved to a different competitive level with eight other employees and thus avoided further threat by a potential Reduction in Force. The record does not indicate how long Plaintiff remained in the unique competitive level before he brought it to Defendant's attention. Nevertheless, Defendant claims that Plaintiff was among "a lot" of employees who were mistakenly placed into wrong competitive levels. (Doct. 22, Exh. 5, pg. 181-82). Defendant claims that these mistakes were made because it had been implementing new job descriptions for its employees, which apparently led to some "errors" in the assignment of competitive levels that year. (Id.). Plaintiff does not dispute this explanation, but maintains that he was given this placement in an effort to retaliate against him for his EEOC charge. (Doct. 22, Exh. 5, pg. 149, 182).

The only evidence of record that Plaintiff's employment was in any way affected by the placement was Plaintiff's response when asked whether he was negatively affected by a Reduction in Force while in that placement. Plaintiff answered, "It would have affected me if there had been a . . . RIF." (Defendant's Motion for Summary Judgment, Exh. 5, pg. 60). Plaintiff does not assert, and the

record does not establish, that his employment was ever actually adversely affected in connection with the erroneous placement.

With regard to Defendant's alleged collaboration with the EEOC to terminate Plaintiff's employment,  Defendant responds that it engaged in no such conspiracy with the EEOC, and that it acted properly in reporting the allegations into Plaintiff's financial condition to its Security Intelligence Directorate.  Defendant explains that both its Employee Relations Department and its Legal Office instructed Mr. Barber to report the allegations, as the matter "could affect national security."  (Id.).  Mr. Barber has explained that the allegations placed national security at risk because Defendant engages in "highly classified" work that requires strict security measures for its employees.  (Id.).  These measures include investigating each of its employees "to determine if there's anything in their background that could . . . be used [by someone without a security clearance] to extract information of a secret nature" regarding Defendant's programs. (Defendant's Motion for Summary Judgment, Exh. 3, pg. 103).  Because Plaintiff worked in a "highly classified area" and required a security clearance to perform his job, Defendant asserts that Mr. Barber acted within his responsibilities as Plaintiff's supervisor when he brought the allegations to the attention of the Security Intelligence Directorate.

With regard to the performance rating, Defendant does not dispute that the "C"

27

rating of June 1998 was lower than any other it has given Plaintiff.  To rebut Plaintiff's allegation that it gave him this rating in retaliation for his EEOC charge, Defendant alleges that the rating was compelled by Plaintiff's poor job performance during the evaluation period.  (Doct. 29, Exh. 2; Exh. 3).  Specifically, Defendant alleges that Plaintiff did not attend assigned meetings or participate in assigned projects.  (Doct. 29, Exh. 2).  Plaintiff disputes this argument with evidence that he fully performed his assigned work, including notes that he took at meetings that Defendant claims he never attended.  (Doct. 29, Exhs. 5 & 6).  However, even if the performance rating was unfairly given, Plaintiff has presented no evidence that it was used to demote him, decrease his salary, change his work schedule, or otherwise adversely affect his employment.

Even if the rating could be considered an adverse employment action, however, Plaintiff has failed to establish a causal connection between his EEOC charge and the performance rating.  The record indicates that Plaintiff received an "A" performance rating for the period ending in September 1997, only one month after he told Mr. Barber that he intended to file his first EEOC charge.  (Doct. 29, Exh. 4).  However, Plaintiff asserts that the "C" rating was given less than one year later, and that its temporal proximity with the EEOC charge indicates that Defendant gave him the lower rating in retaliation for the EEOC charge.  The court has found no evidence in

28

support of this argument, and finds that it is contradicted by the "A" rating because that rating shared even closer temporal proximity with the EEOC charge than the "C" rating.

Because Plaintiff has not shown that he suffered an adverse employment action resulting from the alleged conduct by Defendant, the court finds that he has failed to present a prima facie case of retaliation, and that Defendant is entitled to summary judgment as to this claim.

## V.   CONCLUSION

After reviewing the evidence in its entirety, the court finds no genuine issue of material fact sufficient for any of Plaintiff's claims to survive summary judgment. Plaintiff has failed to present a prima facie case of hostile work environment and disparate treatment on the bases of either his race or his religious beliefs.  Plaintiff has also failed to show that Defendant retaliated against him for filing an EEOC charge against it.

Based on the foregoing, the court finds that the motion of Defendant, R. L. Brownlee, Acting Secretary, Department of the Army, for summary judgment is due to be **GRANTED**.  A separate Order will be entered.

**DONE** and **ORDERED** this 27th day of April, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge